UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SCOTT T. B., <br><br>　　　　Plaintiff, <br><br>　　v. <br><br> MARTIN O'MALLEY, <br><br>　　　　Defendant. | ) <br> ) <br> ) <br> ) <br> ) No. 1:23-cv-00590-SEB-MKK <br> ) <br> ) <br> ) <br> ) |

**REPORT & RECOMMENDATION**

Plaintiff Scott T. B. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 1381 *et seq.* Judge Sarah Evans Barker has referred the matter to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkt. 11). For the reasons set forth below, the undersigned recommends that the Commissioner's decision denying Plaintiff benefits be **AFFIRMED.**

**I.   PROCEDURAL HISTORY**

On or about November 2, 2020, Plaintiff applied for benefits under Title XVI of the Social Security Act. (Dkt. 9-5 at 2-9, R. 169-76). Plaintiff alleged he was disabled due to a stroke, lupus, hypertension, leukocytosis, and memory problems. (Dkt. 9-6 at 6, R. 188). The Social Security Administration ("SSA") denied Plaintiff's claim initially on September 1, 2021, (Dkt. 9-4 at 7, R. 90), and on review on December 15, 2021, (*id.* at 14, R. 97). Plaintiff submitted a request for a hearing,

which was granted. (*Id.* at 16, 52; R. 99, 135). The hearing occurred on July 12, 2022, before Administrative Law Judge ("ALJ") Gladys Whitfield. (Dkt. 9-2 at 34-61, R. 33-60). At the hearing, Plaintiff, who was represented by counsel, testified, as did Vocational Expert ("VE") Sherry Ronning. (*Id.*). The ALJ issued an unfavorable decision, finding that Plaintiff was not disabled. (*Id.* at 15-29, R. 14-28). Following an unsuccessful administrative appeal, (*id.* at 2-5, R. 1-4), Plaintiff now seeks judicial review of the ALJ's decision denying benefits.

## II.  STANDARD OF REVIEW

To qualify for disability, a claimant must be disabled within the meaning of the Social Security Act. To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that he is not able to perform the work he previously engaged in and, based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A).

The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 416.920(a).[1] The ALJ must consider whether:

---

[1] The Code of Federal Regulations contains separate, parallel sections pertaining to disability benefits under the different titles of the Social Security Act, such as the one cited here that is

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 416.920; *Briscoe*, 425 F.3d at 352. "If a claimant satisfies steps one and two, but not three, then he must satisfy step four." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). "Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Id.*; *see also* 20 C.F.R. § 416.920. A negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled.

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01

---

applicable to SSI benefits. Often, the parallel section pertaining to the other type of benefits—disability insurance benefits ("DIB")—is verbatim and makes no substantive legal distinction based on the benefit type. *See* 20 C.F.R. § 404.1520(a). Because the statutory references for SSI and DIB claims are substantially similar, the undersigned may reference them interchangeably throughout this opinion.

3

(7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id*. The Commissioner must then establish that the claimant—in light of his age, education, job experience, and RFC to work—is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(g).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence and free of legal error. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation marks and citations omitted); *see also Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Plaintiff is disabled, but,

rather, whether the ALJ's findings were supported by substantial evidence and free of legal error. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (*citing Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), *as amended* (Dec. 13, 2000); *see also Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) ("Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'") (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)). "Nevertheless, [the Court must] conduct a 'critical review of the evidence' before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citation omitted); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to h[er] conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific

5

evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

### III. BACKGROUND

Plaintiff applied for disability benefits on November 20, 2020, alleging he has been disabled since December 31, 2016, due to a stroke, lupus, hypertension, leukocytosis, and memory problems. (Dkt. 9-6 at 6, R. 188). Plaintiff was 45 years old at the alleged onset date. (*Id.* at 2, R. 184). He has a GED and past relevant work experience as a short order cook and parts inspector. (Dkt. 9-2 at 27, R. 26; Dkt. 9-6 at 6-7, R. 188-89).

In determining whether Plaintiff qualified for disability benefits, the ALJ applied the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a) and concluded that Plaintiff was not disabled. At Step One, the ALJ determined Plaintiff had not engaged in substantial gainful work since filing for disability. (Dkt. 9-2 at 17, R. 16).

At Step Two, the ALJ found Plaintiff had the following severe impairments: major depressive disorder, mild neurocognitive disorder, post-traumatic stress disorder, anxiety, stroke, left knee osteoarthritis, chronic obstructive pulmonary disease with emphysema, and lupus. (*Id.*). The ALJ also concluded Plaintiff had the severe impairments of "cataracts and retinal detachment of the right eye causing limited right visual field." (*Id.*). The ALJ found Plaintiff had the following non-

severe impairments: obesity, sleep apnea, vitamin D deficiency, syncope, headaches, urinary incontinence, methamphetamine abuse (in remission), cannabis abuse, hyperlipidemia, and hypertension. (*Id.*). Finally, the ALJ determined Plaintiff's back problems did not represent a medically determinable impairment. (*Id.* at 19, R. 18).

At Step Three, the ALJ concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Dkt. 9-2 at 19, R. 18). Starting with musculoskeletal listings (Section 1.18), the ALJ concluded the evidence did not establish that Plaintiff needed a walker or other mobility aid; nor did the evidence establish Plaintiff could not do work involving fine and gross movements with his upper extremities. (*Id.*). Discussing Plaintiff's vision, the ALJ concluded Plaintiff's impairments did not meet or equal Section 2.02 or 2.03 based on vision tests which showed Plaintiff's vision was better than the threshold requirements. (*Id.*). The ALJ also considered whether Plaintiff's impairments met the requirements of Sections 3.02, 11.04, 14.02, 12.02, 12.04, 12.06, 12.08, or 12.15, and concluded they did not. (*Id.* at 19-20, R. 18-19). However, the ALJ did find Plaintiff had "moderate" limitations in: (a) understanding, remembering or applying information; (b) interacting with others; (c) concentrating, persisting or maintaining pace; and (d) adapting or managing oneself. (*Id.* at 20-21, R. 19-20). Yet, because those findings did not include at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria were not met. (*Id.* at 21, R. 20). Finally, the

ALJ considered the "paragraph C" criteria and concluded the evidence did not satisfy those criteria because Plaintiff's medical records neither showed that he was receiving therapy or other treatment that diminished his symptoms of a mental disorder nor showed that Plaintiff had "minimal capacity to adapt to changes in the environment or new demands." (*Id.*).

After Step Three but before Step Four, the ALJ formulated the following RFC, concluding Plaintiff could perform light work except:

> he can never climb ladders, ropes, or scaffolds and can no more than occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant is limited to no more than frequent reaching forwards, to the side, and overhead, and can no more than frequently handle, finger, and feel. The claimant can tolerate no exposure to extreme heat and no more than occasional exposure to environmental irritants such as fumes, odors, dusts, and gases. He must avoid all use of hazardous moving machinery and all exposure to unprotected heights, and he cannot perform work requiring driving or operating a motorized vehicle to perform the functions of the job. The claimant is limited to job tasks that can be learned in 30 days or less. He is limited to simple, routine and repetitive tasks, which is short-cycle work, where the same routine tasks are performed repeatedly according to set procedures, sequence, and pace. He cannot perform tandem tasks or teamwork and is limited to occasional, brief interaction with coworkers, supervisors, and the general public, but he can tolerate normal supervisory interactions such as performance appraisals, corrections, instructions, and directives as necessary, and he can tolerate interactions to receive instructions and for task completion of simple, routine, repetitive work. He can exercise judgment in making work-related decisions commensurate with simple, routine, repetitive work. He is limited to work requiring no direct interaction with the public to perform the essential functions of the job. He is limited to work with no fast-paced production requirements and no more than occasional routine workplace changes.

8

(Dkt. 9-2 at 21-22, R. 20-21).

At Step Four, the ALJ determined the Plaintiff could not perform his past relevant work as a short order cook or parts inspector. (*Id.* at 27, R. 26). At Step Five, relying on the VE's testimony and considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff could do other work that existed in sufficient numbers in the national economy. (*Id.* at 27-28, R. 26-27). Therefore, the ALJ concluded Plaintiff was not disabled. (*Id.* at 29, R. 28).

## IV.   ANALYSIS

Plaintiff argues the ALJ's decision should be reversed for two specific errors. First, Plaintiff alleges the ALJ's decision is "internally inconsistent" because the ALJ failed to explain an alleged discrepancy between her conclusion that Plaintiff could perform simple, repetitive tasks and an examiner's opinion that Plaintiff's "ability to understand and remember simple instructions [wa]s mildly to moderately impaired." (Dkt.[2] 12 at 4, 19-21). Second, Plaintiff argues the ALJ did not adequately consider Plaintiff's visual impairment when formulating the RFC or evaluating Plaintiff's ability to perform the jobs described by the VE. (*Id.* at 4, 22-23). The Commissioner maintains that substantial evidence supports the ALJ's conclusions and argues Plaintiff fails to identify factual or legal error requiring remand. (Dkt. 14 at 5-10).

---

[2] The page numbers provided at the bottom of Plaintiff's opening brief do not correspond with the paginated numbers in the header that is automatically generated during docketing. Throughout the Order, the undersigned will cite to the page numbers as they appear in the header of the document.

### A.   Plaintiff's Ability to Follow Instructions

Plaintiff argues the ALJ erred in crediting the opinion of the psychological consultative examiner, Dr. Kurzhals, that Plaintiff's ability to follow simple instructions was "mildly to moderately impaired" while simultaneously concluding Plaintiff could perform "simple, routine, and repetitive tasks." (Dkt. 12 at 5, 19-20). According to Plaintiff, these two statements were not reconciled by the ALJ, and thus the ALJ failed to build an accurate and logical bridge from evidence to conclusion. (*Id*. at 21).

The Seventh Circuit has defined the RFC as "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from h[is] impairments." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). It is the most the claimant can do despite his limitations. 20 C.F.R. § 416.945(a). When determining the RFC, the Regulations and Seventh Circuit case law make clear that an ALJ's RFC assessment must incorporate all of a claimant's functional limitations supported by the medical record. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *see also Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga* for same proposition); *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment.") In doing so, she must build an "accurate and logical bridge from the evidence to h[er] conclusion," *Clifford*, 227

F.3d at 872. As stated above, even a minimal explanation of a decision to accept or reject specific evidence will suffice, as long as the explanation is legitimate.

Here, the ALJ formulated an RFC which, in part, limited the tasks Plaintiff could perform:

> . . . [He] is limited to job tasks that can be learned in 30 days or less. He is *limited to simple, routine and repetitive tasks, which is short-cycle work, where the same routine tasks are performed repeatedly according to set procedures, sequence, and pace*. *He cannot perform tandem tasks or teamwork* and is limited to occasional, brief interaction with coworkers, supervisors, and the general public, but he can tolerate normal supervisory interactions such as performance appraisals, corrections, instructions, and directives as necessary, and *he can tolerate interactions to receive instructions and for task completion of simple, routine, repetitive work. He can exercise judgment in making work-related decisions commensurate with simple, routine, repetitive work*. He is limited to work requiring no direct interaction with the public to perform the essential functions of the job. He is *limited to work with no fast-paced production requirements and no more than occasional routine workplace changes*.

(Dkt. 9-2 at 21-22, R. 20-21 (emphasis added)). The ALJ's opinion makes clear that she formulated these portions of the RFC based on her review of the record and, more specifically, the opinions of Dr. Kurzhals and state agency psychological consultants. (*Id*. at 25-27, R. 24-26). Dr. Kurzhals concluded that Plaintiff's "ability to understand and remember *simple instructions* is estimated to be *mildly to moderately impaired*," while "[h]is ability to understand and remember *complex instructions* is estimated to be *moderately to markedly impaired*[.]" (Dkt. 9-7 at 122, R. 374 (emphasis added)). Meanwhile, the state agency psychological consultants concluded Plaintiff had moderate limitations related to understanding,

11

remembering, and carrying out *detailed* instructions, maintaining concentration for an extended period of time, and in various other areas related to Plaintiff's ability to interact with coworkers and the general public.[3] (Dkt. 9-3 at 9-11, 21-23; R. 68-70, 80-82). The state consultants further stated Plaintiff "is able to: understand, carry out and remember simple instructions [and] able to make judgments commensurate with functions of simple, repetitive tasks . . . ." (*Id.* at 11, 23; R. 70, 82).

In evaluating these psychological findings, the ALJ found the state agency psychological consultants "generally persuasive" and likewise credited Dr. Kurzhals' opinion regarding Plaintiff's moderate impairments. (Dkt. 9-2 at 25-26, R. 24-25). The ALJ did not find Dr. Kurzhals' opinion regarding Plaintiff's marked impairment (in understanding and remembering ***complex instructions***) to be persuasive, because those findings were inconsistent with other medical evidence, including treatment records and the state agency findings. (*Id.* at 26, R. 25). Based on the evidence before her, including the psychological opinions that she credited, the ALJ found that Plaintiff's "moderate limitation in understanding, remembering or applying information" limited Plaintiff to "simple, routine and repetitive tasks." (*Id.*)

Plaintiff objects to this conclusion by the ALJ. According to Plaintiff, his mild to moderate impairment in understanding, remembering, or applying information

---

[3] Plaintiff does not challenge the ALJ's determination regarding these social limitations, and accordingly a full summary is omitted.

means Plaintiff is incapable of simple, repetitive, and routine tasks.[4] (Dkt. 12 at 19-20). But in making his argument, Plaintiff fails to identify an inconsistency in the ALJ's decision; to the contrary, he only highlights the consistency of the decision.[5] First, the ALJ concludes that Plaintiff has a mild to moderate impairment in understanding, remembering or applying information. As a result, she limits him to simple, routine and repetitive tasks and job tasks that can be learned in 30 days or less. (Dkt. 9-2 at 26, R. 25). Moreover, as the Commissioner argues, (Dkt. 14 at 7), the ALJ imposes additional restrictions: Plaintiff cannot perform tandem tasks or teamwork, cannot work in fast-paced production environments, and can only tolerate occasional changes in routine. (Dkt. 9-2 at 21-22, 26; R. 20-21, 25). Plaintiff argues these limitations are "separate limitations and not related to Dr. Kurzhal[s]'s opinion regarding [Plaintiff's] limitations regarding simple, routine and repetitive tasks." (Dkt. 15 at 2). But the ALJ's own opinion refutes this argument by explaining the connections between the various impairments and resulting limitations: "[Plaintiff's] moderate limitations in concentrating, persisting, or maintaining pace can be expected to contribute to his restriction to simple, routine and repetitive tasks and short-cycle work, and to prevent him from performing work

---

[4] Plaintiff also argues the ALJ improperly discredited Dr. Kurzhals' finding that Plaintiff had a marked impairment understanding and remembering complex instructions. (Dkt. 12 at 21-22). However, the RFC limits Plaintiff to simple tasks, (Dkt. 9-2 at 21-22, R. 20-21), so the inclusion or exclusion of Dr. Kurzhals' opinion regarding complex tasks has no bearing on the outcome of the ALJ's determination.

[5] In advancing his argument, Plaintiff cites other evidence that supports his "inability to consistently attend to tasks." (Dkt. 12 at 20). But Plaintiff does *not* argue that the ALJ failed to consider this evidence or somehow erred in her subjective symptom analysis. Nor does the Court identify any such failing. To the contrary, it's clear that the ALJ gave adequate attention to Plaintiff's subjective complaints and other non-medical-record evidence. (*See, e.g.*, Dkt. 9-2 at 25-27, R. 24-26).

with fast-paced production requirements." (Dkt. 9-2 at 26, R. 25; *see also id.* ("His moderate limitations in adapting or managing himself can be expected to restrict him to exercising judgment in making work-related decisions commensurate with simple, routine, repetitive work, and to performing work requiring no direct interaction with the public, no fast-paced production requirements, and no more than occasional workplace changes.")). In short, the record shows the ALJ considered these mental limitations as a whole, as is appropriate.[6] *Denton*, 596 F.3d at 423.

To reiterate, the question before the Court is whether the ALJ adequately supported her conclusion with substantial evidence. The ALJ has done so here. She considered the entire record and articulated a bridge between the record and her conclusions that this Court can trace. *See Diaz*, 55 F.3d at 307-08. The ALJ formulated the disputed RFC limitations after considering the medical evidence and incorporating Plaintiff's functional limitations. *See Varga,* 794 F.3d at 813. Where evidence or experts conflicted, the ALJ built a logical bridge from the evidence to her conclusion, and this Court will not substitute its own judgment. *Clifford*, 227 F.3d at 869. The record here does not provide grounds to remand.

---

[6] Plaintiff also critiques the ALJ's citations to Plaintiff's "conservative treatment for his mental impairments with no treatment from a mental health specialist." (Dkt. 12 at 20 (citing Dkt. 9-2 at 25, 27; R. 24, 26)). While true that an ALJ should not summarily dismiss a claimant's failure to seek treatment without considering other medical evidence or explanations for said failure, *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009), there is no cause for concern here. The ALJ's citations to conservative treatment appear in summary paragraphs explaining how Plaintiff's treatment is consistent with other, more persuasive evidence and in a sentence critiquing Dr. Kurzhals' opinion regarding Plaintiff's limitation in understanding *complex* instructions. (Dkt. 9-2 at 25, 26, 27; R. 24, 25, 26). Nothing in the ALJ's opinion suggests that she used conservative treatment as a basis for imposing (or not imposing) the type of limitations at issue here.

14

### B.  Visual Impairments

Plaintiff next alleges the ALJ erred by failing to consider the effect his severe vision impairment would have on his ability to do the jobs identified at Step Five. (Dkt. 12 at 22-23). According to Plaintiff, his right eye is able to see, at most, "hand motion or counting fingers" from more than two or four feet away. (*Id.* at 22). The ALJ incorporated this limitation into the RFC by restricting Plaintiff from exposure to hazards and operating motor vehicles or machinery. (Dkt. 9-2 at 26, R. 25). However, Plaintiff asserts the ALJ did not consider whether his limited vision would prevent him from doing the jobs identified by the VE as jobs Plaintiff could perform. (Dkt. 12 at 22-23). All three jobs—garment sorter, small products assembler, and inspector and hand packager—require "frequent near acuity" (clarity of vision at 20 inches or less) and "accommodation" (adjustment of lens of eye to bring an object into sharp focus). (*Id.* at 23 (citing *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*)). Plaintiff argues the ALJ failed to consider how Plaintiff's limited vision in his right eye affects his ability to perform these aspects of these jobs. (*Id.*).

The Commissioner responds that Plaintiff misreads the medical evidence. Plaintiff has "unlimited near acuity, depth perception, and accommodation," she argues. (Dkt. 14 at 9 (citing Dkt. 9-3[7] at 8, 20; R. 67, 79)). Furthermore, the Commissioner argues, the ALJ formatted the RFC and supplied it to the VE to identify any jobs Plaintiff could perform in the national economy; seeking further

---

[7] The citation in Commissioner's brief is to Dkt 9-7, which begin at R. 254. R. 67 and 79 correspond to Dkt. 9-3 at 8 and 20, which is presumed to be the intended citation.

15

evaluations from the VE based on the details of Plaintiff's medical conditions was neither required nor appropriate. (*Id*. at 9).

As stated, an ALJ's RFC assessment must incorporate all of a claimant's functional limitations supported by the medical record. *Varga*, 794 F.3d at 813. Where an ALJ asks hypothetical questions of a VE, those questions must include all limitations supported by medical evidence, or the VE must have had an opportunity to learn of Plaintiff's limitations, whether by reviewing medical records or listening to testimony. *Young,* 362 F.3d at 1003. The Court reviews the ALJ's RFC determination for support by substantial evidence, *i.e.*, evidence sufficient for a reasonable mind to accept as adequate to support a conclusion. *Elder*, 529 F.3d at 413. Even if reasonable minds could differ as to the meaning of the evidence, the ALJ's decision should be affirmed if adequately supported. *Id*.

Here, the ALJ's determination is supported by substantial evidence. There are three sets of medical records concerning Plaintiff's eyesight. Two of those record sets, the state agency physician assessments on Plaintiff's initial determination and reconsideration, list Plaintiff as having unlimited near acuity and accommodation. (Dkt. 9-3 at 8, 20; R. 67, 79). The final set of records comes from Plaintiff's ophthalmologist before and after his cataract surgery. (Dkt. 9-8 at 115-130, R. 548-563). Plaintiff cites these records to support his characterization of his right eye vision as "no more than hand motion or counting fingers at a distance of . . . two or four feet," (Dkt. 12 at 22), and indeed those records contain several annotations of Plaintiff's right eye visual acuity ("VA OD") as being "DscCF 4ft," "DscCF 3ft,"

16

"DscCF 2ft," "DscCF Face," and "DscHM."[8] (Dkt. 9-8 at 115, 117, 119, 121, 123, 125, 127, 129; R. 548, 550, 552, 554, 556, 558, 560, 562). Finally, Plaintiff testified at the hearing that he "can't see when [he] look[s] down" and that he has no peripheral vision in his right eye but can read with the help of reading glasses. (Dkt. 9-2 at 47-48, R. 46-47).

Taken as a whole, this record provides substantial evidence to support the ALJ's RFC determination. There is ample evidence in both the state agency evaluations and Plaintiff's own testimony to support the conclusion that Plaintiff has no right eye peripheral vision and that this limitation is adequately addressed by the RFC limiting Plaintiff from "exposure to hazards and operating motor vehicles or machinery." Nor is Plaintiff's argument that the VE failed to consider Plaintiff's limitations compelling. The VE was present for Plaintiff's testimony regarding his vision difficulties. (*Id.* at 38, 47-48; R. 37, 46-47). Accordingly, the VE had that evidence available when answering the ALJ's hypothetical. *See Young,* 362 F.3d at 1003 (reiterating that VE must be apprised of all limitations supported by medical evidence, whether through the ALJ's questioning or review of records or testimony). Plaintiff's further arguments on this point amount to a request for this court to reweigh the evidence and reach a different conclusion, which is impermissible. *Elder*, 529 F.3d at 413.

---

[8] Taber's Medical Dictionary, *acuity*, ("People with worse vision, e.g., 20/400 or worse, are said to have 'count fingers' (CF) vision: they may not be able to read any of the letters or figures on an eye chart, but they can often see (and count) how many fingers are held in front of them from a specified distance. Those who cannot identify fingers from any distance may still see 'hand motion' (HM)), https://www.tabers.com/tabersonline/view/Tabers-Dictionary/745988/all/acuity#0 (last accessed Dec. 21, 2023).

17

## V. CONCLUSION

For the reasons detailed herein, the undersigned recommends that the ALJ's decision denying Plaintiff benefits be **AFFIRMED**.

Any objections to the Magistrate Judge's Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO RECOMMENDED.

Date: 22 December 2023

M. Kendra Klump
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email.