UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

SCOTT B.,[1]                              )
                                         )
          Plaintiff,                     )
                                         )
          v.                             )        No. 1:23-cv-00590-SEB-MKK
                                         )
MARTIN O'MALLEY Commissioner of the      )
Social Security Administration,          )
                                         )
          Defendant.                     )

## ORDER SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF'S OBJECTIONS

This is an action for judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") finding Plaintiff Scott B. ("Scott B.") not entitled to supplemental security income. This case was referred to Magistrate Judge Klump for initial consideration. On December 22, 2023, Magistrate Judge Klump issued a Report and Recommendation, recommending that the Administrative Law Judge's ("ALJ") decision denying Scott B. benefits be affirmed. This cause is now before the Court on Scott B.'s Objections to the Magistrate Judge's Report and Recommendation. Dkt. 17.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

## STANDARD OF REVIEW

We review the Commissioner's denial of benefits to determine whether it was supported by substantial evidence or was the result of an error of law. *Rice v. Barnhart*, 384 F.3d 363, 368–69 (7th Cir. 2004); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Our review of the ALJ's decision does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). However, the ALJ's decision must be based upon consideration of "all the relevant evidence," without ignoring probative factors. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In other words, the ALJ must "build an accurate and logical bridge" from the evidence in the record to his or her conclusion. *Dixon*, 270 F.3d at 1176. We confine the scope of our review to the rationale offered by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Tumminaro v. Astrue*, 671 F.3d 629, 632 (7th Cir. 2011).

When a party objects to specific elements of a magistrate judge's report and recommendation, the district court conducts a *de novo* review to determine for itself whether the Commissioner's decision was supported by substantial evidence or, rather, was the result of an error of law. Fed. R. Civ. P. 72(b). The district court "makes the ultimate decision to adopt, reject, or modify" the report and recommendation, and need not accept any portion as binding; the court may, however, defer to those conclusions of the report and recommendation to which timely objections have not been raised by a party. *See Schur v. L.A.*

*Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759–761 (7th Cir. 2009). We have followed those guidelines in conducting this review.

## BACKGROUND[2]

On November 2, 2020, Plaintiff Scott B. protectively filed an application for supplemental security income, alleging a disability onset date of December 31, 2016. The agency denied Scott B.'s application initially and on reconsideration. After a hearing, the ALJ concluded that Scott B. was not disabled.

At Step One of the five-step sequential analysis, the ALJ found that Scott B. had not engaged in substantial gainful activity since November 2, 2020, the date he applied for benefits. At Step Two, the ALJ identified the following severe impairments: major depressive disorder, mild neurocognitive disorder, posttraumatic stress disorder ("PTSD"), anxiety, stroke, left knee osteoarthritis, chronic obstructive pulmonary disease ("COPD") with emphysema, systemic lupus erythematosus ("SLE"), and cataracts and retinal detachment of the right eye causing limited right visual field. The ALJ also found the following non-severe impairments: obesity, sleep apnea, vitamin D deficiency, syncope, headaches, urinary incontinence, methamphetamine abuse (in remission), cannabis abuse, hyperlipidemia, and hypertension. Though Scott B. had once complained of lower back pain (triggered by tossing a bag of trash into a dumpster), the ALJ determined that any alleged back problem did not amount to a medically determinable impairment.

---

[2] The relevant evidence of record is amply set forth in the parties' briefs as well as the ALJ's decision and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

At Step Three, the ALJ concluded that Scott B. did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Before Step Four, the ALJ determined that Scott B. had the residual functional capacity ("RFC") to perform light work, except as follows:

> [H]e can never climb ladders, ropes, or scaffolds and can no more than occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant is limited to no more than frequent reaching forwards, to the side, and overhead, and can no more than frequently handle, finger, and feel. The claimant can tolerate no exposure to extreme heat and no more than occasional exposure to environmental irritants such as fumes, odors, dusts, and gases. He must avoid all use of hazardous moving machinery and all exposure to unprotected heights, and he cannot perform work requiring driving or operating a motorized vehicle to perform functions of the job. The claimant is limited to job tasks that can be learned in 30 days or less. He is limited to simple, routine and repetitive tasks, which is short-cycle work, where the same routine tasks are performed repeatedly according to set procedures, sequence, and pace. He cannot perform tandem tasks or teamwork and is limited to occasional, brief interaction with coworkers, supervisors, and the general public, but he can tolerate normal supervisory interactions such as performance appraisals, corrections, instructions, and directives as necessary, and he can tolerate interactions to receive instructions and for task completion of simple, routine, repetitive work. He can exercise judgment in making work-related decisions commensurate with simple, routine, repetitive work. He is limited to work requiring no direct interaction with the public to perform the essential functions of the job. He is limited to work with no fast-paced production requirements and no more than occasional routine workplace changes.

Dkt. 9-2 at 21–22.

At Step Four, the ALJ concluded that Scott B. could not perform his past relevant work as a short order cook or parts inspector. Lastly, at Step Five, the ALJ determined that Scott B. could perform other work that exists in significant numbers in the national economy, such as garment sorter, small product assembler, and inspector and hand packager.

4

On appeal before the Magistrate Judge, Scott B. argued that the ALJ's decision merited remand for two reasons: First, Scott B. contended that the ALJ failed to explain the evidentiary basis for limiting him to simple, routine, and repetitive tasks. Second, Scott B. asserted that the RFC limitations failed to account for his visual impairments.

The Magistrate Judge rejected both arguments, finding that the ALJ's decision was, as a whole, supported by substantial evidence. Scott B. timely objected to the Magistrate Judge's Report and Recommendation. The Commissioner filed no response, and the time for doing so has passed. Scott B.'s objections await our ruling.

## DISCUSSION

Scott B.'s Objection raises two issues: (1) the RFC limitation to simple, routine, and repetitive tasks does not adequately support his mental limitations, as evinced in the record; and (2) the RFC does not adequately accommodate his severe visual impairments. We address each in turn.

## I.    RFC Limitations to Simple, Repetitive, and Routine Tasks

In accordance with Scott B.'s moderate limitations in understanding, remembering, or applying information as well as concentrating persisting or maintaining pace, the ALJ limited him to simple, routine, and repetitive tasks. In his opening brief, Scott B. argued that the ALJ failed to explain the rationale for the RFC limitation to simple tasks, particularly with respect to his limited ability to understand and remember simple instructions. He also argued, albeit in a single paragraph, that the RFC did not take into account his inability to consistently attend to tasks, as evidenced by his mental limitations and complaints of worsening fatigue and need to nap.

The Magistrate Judge evaluated Scott B.'s argument as it pertained to his moderate limitations in understanding, remembering, or applying information, concluding that the ALJ's assessment was supported by substantial evidence. She did not, however, fully address Scott B.'s contention regarding his inability to attend to tasks consistently, instead finding that "the ALJ gave adequate attention to [his] subjective complaints and other non-medical-record evidence." R. & R. 13 n.5, dkt. 16.

In his Objection, Scott B. does not take issue with the Magistrate Judge's conclusion regarding his moderate limitations in understanding, remembering, or applying information, and, as such, we do not disturb that aspect of the Magistrate Judge's analysis. Scott B. does, on the other hand, reassert that the RFC limitation to simple work does not account for his mental limitations—this time reiterating his complaints of fatigue and, relatedly, his moderate limitations in concentrating, persisting, or maintaining pace. We evaluate each argument below.

### A.      Fatigue

Scott B. asserts that neither the ALJ nor Magistrate Judge addressed the evidence of his excessive daytime sleepiness and fatigue that he cited as evidence supportive of his argument regarding his inability to attend to tasks consistently. Pl.'s Obj. 2, dkt. 17 (citing Pl.'s Br. 20, dkt. 12). At the administrative hearing, Scott B. testified that, due to his lupus, he is "tired all the time" and that he spends much of his day-to-day life napping. Dkt. 9-2 at 46. He has also regularly complained to his medical providers about worsening fatigue and excessive daytime sleepiness. Dkt. 9-7 at 6, 99, 106, 110, 113, 118, 120.

The ALJ acknowledged Scott B.'s fatigue, referencing his testimony at the hearing and noting that "[h]e has occasionally reported symptoms of fatigue." Dkt. 9-2 at 22–23. She also found that Scott B.'s "allegations have some support in the record," leading to her discussion of discrepancies between his alleged symptoms and the medical evidence. *Id.* at 23–26. Absent from this discussion, however, is any mention of how she evaluated or assessed Scott B.'s consistent reports of fatigue and need for frequent naps. Likewise, none of the RFC limitations are clearly tailored to Scott B.'s lupus-related fatigue. This omission is especially concerning where, as here, the vocational expert ("VE") testified that suitable employment options would tolerate no more than ten percent off-task behavior and no more than six days of absenteeism. Dkt. 9-2 at 60. *See also Smith v. Barnhart*, 59 F. App'x 901, 908 (7th Cir. 2003) ("[T]he ALJ did not explain why he discredited [the claimant's] testimony that she suffered from fatigue and needed frequent naps, conditions which the vocational expert testified would prevent [the claimant] from working.").

Though we neither reweigh the evidence nor question the ALJ's credibility determinations, the ALJ must sufficiently articulate her reasoning such that a reviewing court may trace her reasoning. *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) ("It is not a court's role to displace an ALJ's judgment by making our own findings about the facts, but we cannot uphold an administrative determination that failed to explain the outcome adequately."). Here, the ALJ did not address whether (or to what degree) Scott B.'s consistent complaints of fatigue and need for frequent naps were supported by the medical evidence. Further, she did not articulate the limitations, if any, that would be appropriately tailored to these symptoms. Thus, we cannot say that the ALJ adequately built a logical bridge to her

conclusion. *Gonzalez v. Astrue*, 894 F. Supp. 2d 1057, 1066 (N.D. Ill. 2012); *Lopez v. Berryhill*, 340 F. Supp. 3d 696 (N.D. Ill. 2018) ("[T]he ALJ has to explain her decision, whether it's to reject claims of fatigue or to accept them and account for them—logically—in her RFC finding.").

### B. Moderate Limitations in Concentrating, Persisting, or Maintaining Pace

Scott B. also asserts that his moderate limitations in concentrating, persisting, or maintaining pace were inadequately incorporated into the RFC restrictions of simple, routine, and repetitive tasks and short-style work as well as his avoiding fast-paced production requirements. According to Scott B., "[n]either the ALJ nor the Magistrate [Judge] explained *how* a limitation to simple unskilled work with no fast-paced production requirements accommodates moderate limitations in ability to maintain attention and concentration for extended periods . . . ." Pl.'s Obj. 3, dkt. 17 (emphasis in original). We agree that this omission exists here.

The Seventh Circuit has disagreed "[t]ime and again" that restricting a claimant to unskilled work without fast-paced production requirements adequately incorporates limitations in concentration, persistence, and pace. *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). As the Seventh Circuit "ha[s] labored mightily to explain . . . , the relative difficulty of a specific job assignment does not necessarily correlate with a claimant's ability to stay on task or perform at the speed required by a particular workplace." *Id.* Phrased differently, a claimant who has difficulty concentrating may not necessarily be capable of consistently performing work, regardless of its simplicity. *Id.* at 374; *see*, *e.g.*, *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019) (limitation of simple and routine tasks does not accommodate

deficient concentration and functioning). As for production speed, the Seventh Circuit has "previously rejected similar formulations of a claimant's limitations because there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace." *DeCamp v. Berryhill*, 916 F.3d 671, 675–76 (7th Cir. 2019).

As the ALJ recounted, Scott B. was observed with moderate limitations in understanding, remembering, or applying information, which the ALJ accommodated by restricting Scott B. to simple, routine, and repetitive tasks that can be learned in thirty days or less. Dkt. 9-2 at 20, 26. The Magistrate Judge concluded (and we agree) that this RFC limitation was supported by substantial evidence. This determination by the Magistrate Judge, however, did not address the full breadth of Scott B.'s argument in his opening brief, where he maintained that the ALJ did not explain the evidentiary basis for limiting Scott B. to simple, routine, and repetitive tasks.

Scott B. maintains that the ALJ failed to address fully how a limitation to simple tasks related to his moderate limitations in concentration, persistence, or pace. In the administrative decision, the ALJ noted Scott B.'s allegations of a limited attention span and that he "only sometimes finishe[s] what he started." Dkt. 9-2 at 21. She also mentioned Scott B.'s August 2021 and December 2021 psychological consultative examinations, wherein "he appeared impulsive, easily frustrated, and somewhat restless, and he seemed to have difficulties with memory, attention, and concentration." *Id.* The ALJ explained that she considered these findings when restricting Scott B. to simple, routine, and repetitive tasks without fast-paced production requirements. *Id.* at 26.

As recounted above, the Seventh Circuit has repeatedly advised that neither simple work tasks nor eliminating fast-paced production requirements "may serve as a proxy for including a moderate limitation on concentration, persistence, and pace." *DeCamp*, 916 F.3d at 675–76 (citing *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018); *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016)). Thus, we must agree with Scott B. that—taken together with his reports of fatigue—the ALJ inadequately accounted for his moderate limitations in concentration, persistence, and pace and remand the matter accordingly.

## II.    Severe Visual Impairments

Scott B. argues that the ALJ inadequately accommodated his severe visual impairment of cataracts and retinal detachment of the right eye causing limited right visual field. In his July 2021 consultative examination, Scott B. reported his lack of peripheral vision in his right eye. In August 2021, he underwent extracapsular cataract extraction on his right eye; however, at the time the ALJ issued her decision (a year later), he was "uncertain if this [operation had] resulted in improved vision to correct his vision problems. Dkt. 9-2 at 23.

In evaluating Scott B.'s visual impairment, the ALJ included an RFC limitation to avoid exposure to hazards and operation of motor vehicles and machinery. However, Scott B. maintains that the ALJ failed to consider the impact of his poor vision on the jobs speculated by the VE; to wit, each job listed by the VE—garment sorter, small product assembler, and inspector and hand packager—requires "frequent near acuity" (visual clarity at twenty inches or less) and "accommodation" (adjustment of lens of eye to bring an object

into sharp focus) as well as frequent depth perception for the small product assembler. Pl.'s Br. 23, dkt. 12 (citing *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, ¶¶ 15, 18, App'x C (1993)).

The Magistrate Judge rejected Scott B.'s contention regarding the deficiencies in the ALJ's assessment of his visual impairments, reasoning that the record, as a whole, provided substantial evidence for the RFC determination. The record evidence consists of two state agency physician's assessments, wherein Scott B. was noted as having unlimited near acuity and accommodation. However, Scott B. directs us to the ophthalmologist records from both before and after his operation, according to which he was assessed with varying levels of right eye visual acuity. Dkt. 9-8 at 115, 117, 119, 121, 123, 125, 127, 129. Scott B. also testified at the administrative hearing, with the VE in attendance, that he "can't see when [he] look[s] down," that he has no peripheral vision, but that he can read with the aid of reading glasses. Dkt. 9-2 at 47–48.

We agree with the Magistrate Judge that the ALJ's decision to limit Scott B.'s exposure to hazards and dangerous machinery is supported by substantial evidence in the medical record. Even where reasonable minds could differ in their interpretation of certain evidence, reviewing courts should affirm adequately supported administrative decisions. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Such adequate support exists here. The ALJ reasonably concluded, based on the state agency assessments and Scott B.'s testimony, that Scott B. lacks peripheral vision in his right eye, which impairment she then appropriately accommodated by limiting his exposure to hazards and dangerous machinery.  Reviewing courts are not to "displace the ALJ's judgment by reconsidering facts or evidence,

or by making independent credibility determinations." *Id.* Thus, we will not reweigh the evidence here.

Scott B. maintains that the ALJ's hypotheticals to the VE were incomplete because they did not fully incorporate the extent of his visual impairments, thereby rendering the VE's responses deficient. "Ordinarily, an ALJ's hypothetical questions to a VE 'must include all limitations supported by the medical evidence in the record.' " *Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002)). The ALJ did just that with respect to Scott B.'s visual impairments.

## CONCLUSION

For the reasons explicated above, Scott B.'s Objections to the Magistrate Judge's Report and Recommendation, dkt. 17, are **SUSTAINED in part** and **OVERRULED in part**. Scott B.'s objections are sustained with regard to the ALJ's failure to adequately consider his fatigue, excessive daytime sleepiness, and need to nap as well as his moderate limitations in concentration, persistence, or pace. These matters are **REMANDED** to the ALJ for further consideration consistent with this Entry.

Scott B.'s objections are overruled with regard to his severe visual impairments and related RFC limitations. Accordingly, the Magistrate Judge's Report and Recommendation is hereby **ADOPTED** in all other respects, as explicated herein.

IT IS SO ORDERED.

Date:

_____3/29/2024_____

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

12

Distribution:

Jay Hinsley
SSA-Ogc
jay.hinsley@ssa.gov

Taehee Hwang
Social Security Administration
taehee.hwang@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov

Kirsten Elaine Wold
Hankey Marks & Crider
kwold@hankeylaw.com